UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05-CV-788-H

SHAWN CHRISTOPHER NEEDY                                                         PLAINTIFF

v.

LOUISVILLE/JEFFERSON COUNTY                                                     DEFENDANT
METRO GOVERNMENT

**MEMORANDUM OPINION**

Plaintiff Shawn Needy has sued the Louisville Fire Department ("LFD") for reverse gender discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.040 (2007), when it declined to hire him in 2004.[1]  Discovery is now complete, and LFD has moved for summary judgment.

Although the parties' arguments have revolved around whether Plaintiff can satisfy the *McDonnell Douglas* burden-shifting test, the presence of direct evidence of discriminatory intent by LFD negates the requirement for Plaintiff to establish a *prima facie* case of discrimination.[2]

---

[1] When originally filed in Jefferson Circuit Court, the complaint sought relief for intentional sexual discrimination in violation of unspecified "state and/or federal civil rights laws."  Defendant and the Court reasonably believed that Plaintiff was seeking relief for violation of both the Kentucky Civil Rights Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (2007).  Thus, this Court had original subject matter jurisdiction pursuant 28 U.S.C. § 1331 because there was a federal question, and it permitted removal to federal court.  However, Plaintiff has failed to present a right-to-sue letter from the Equal Employment Opportunity Commission, a necessary prerequisite for filing a Title VII action.  *Puckett v. Tennessee Eastman Co.*, 889 F.3d 1481, 1486 (6th Cir. 1989).  Plaintiff has since conceded that his case rests solely upon a state law claim for discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.

[2] The *McDonnell Douglas* burden-shifting test is used when there is no direct evidence of discriminatory intent:
> First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination.

The primary issue then is whether Plaintiff's direct evidence may be considered on summary judgment. Defendant argues that it is hearsay. However, based upon the evidence available the Court finds that the statement at issue is likely a party admission and admissible. Thus, a factfinder will need to balance the direct evidence of discriminatory intent with LFD's proffered reason for not hiring Needy. For these reasons, summary judgment is inappropriate at this time.

I.

In August 2002, Plaintiff Shawn Needy applied for a Fire / EMS Communications Dispatcher position ("dispatcher") with the LFD. Needy submitted his application to the Louisville Civil Service Board, which handles initial screening and testing for such positions.

Hiring for civil service positions like dispatcher is a multi-layered process. When the Fire Department recognizes that they have position vacancies, they submit a job requisition to the Civil Service Board. Civil Service then publishes a Position Vacancy Announcement, which is essentially a public call for applications with a deadline for submission. From collected applications, Civil Service determines applicant eligibility and requires selected applicants to take a written and oral examination. Based on the combined test results, a ranked eligibility list for that particular job classification is generated. Once compiled, the list is active for a pre-determined period of time, in this case two years, and may be drawn upon multiple times before it expires to fill vacancies for the particular position.

For each vacancy, civil service "certifies" three candidates from the eligibility list to the requisitioning department for consideration. The ultimate decision of whether to hire any of the certified individuals is left to the discretion of the department. In the case of the dispatcher

---

*Jefferson County v. Zaring*, 91 S.W.3d 583, 590 (Ky. 2002) (citing *Notari v. Denver Water Dept.*, 971 F.2d 585, 588 (10th Cir. 1992).

2

position, LFD requires certified candidates to submit to its own interview and screening procedure. Candidates are interviewed by a three person panel of LFD officers, which makes recommendations to the Assistant Director, Col. Wendell Stewart. The candidates who advance beyond the panel interviews are administered polygraph examinations. Col. Stewart reviews the panel notes and the polygraph results and makes a recommendation to the Chief, Gregory Frederick, who makes the final hiring decision.

Needy completed the Civil Service testing and was ranked "22nd" on the list of eligibles. On March 11, 2004 he was one of six candidates "certified" to the LFD to be considered for one of two open dispatcher positions. Needy was the only male applicant certified on the list of six. On April 1, 2004, Needy was interviewed by an LFD panel, which conducted the interview using a prepared questionnaire. One question asked, "Have you ever been fired or asked to leave from a job?" Needy replied "No" to that question. Of the six candidates interviewed, the panel selected Needy as one of three to advance to the polygraph stage of consideration. The polygraph examination was conducted on April 21, 2004. The polygraph report included the results of a pre-examination interview in which Needy admitted for the first time that he had been fired from a previous employment with Cooke & Reeves Superior Vans, but claimed that he could not remember the reason. This information not only conflicted with Needy's responses during his panel interview, it was omitted from his initial application. The application requested a complete employment history, allowing two pages for the information and instructing the applicant to request additional forms if needed. Needy completed only one page and did not list his employment with Cooke & Reeves. On June 1, 2004, Col. Stewart recommended that candidates Amy Capell and Kimberly Brooks move forward in the process. Needy was thereby

eliminated from further consideration.

On June 16, 2004, Chief Frederick accepted Stewart's recommendation and appointed Capell and Brooks to the open dispatcher positions. Needy did not receive notice that he had not been selected for a position. After several months, Needy wrote to the Civil Service Board requesting information on his status. By letter dated October 1, 2004, Needy was informed that the list had expired and he had not been hired. Although the letter stated no reason for the LFD's decision, Needy's father, Larry Needy, a forty-seven-year veteran of the LFD, has testified that Major Julie Baines said that she would have to hire females as dispatchers because there were not enough bedrooms for males.[3]

On November 8, 2005 Needy filed a Complaint in the Jefferson Circuit Court alleging a cause of action for discrimination under unspecified state and federal laws for violation of his civil rights. The action was timely removed to this Court, and at the close of discovery Defendant moved for summary judgment. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On summary judgment, the evidence before the Court must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir.2006).

---

[3] Additionally, at some point Col. Brooks Waldon allegedly expressed an opinion that Needy may not be hired because of the LFD's policy against nepotism. As this statement has no gender component and nepotism is not proffered by LFD as the reason it did not hire Needy, it is irrelevant.

II.

Needy claims disparate treatment on the basis of gender in violation of the Kentucky Civil Rights Act. The Act provides, in relevant part, that "[i]t is an unlawful practice for an employer . . . [t]o fail or refuse to hire . . . any individual . . . because of the individual's . . . sex." Ky. Rev. Stat. Ann. § 344.040(1) (2007). An important purpose of the Kentucky Civil Rights Act was to incorporate the anti-discrimination policies embodied in the Federal Civil Rights Acts of 1964. *See* KRS 344.020(1)(a); *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 817 (Ky. 1992).

Discrimination in violation of the Kentucky Civil Rights Act may be proven through direct or indirect evidence. "Direct evidence is evidence, which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Kentucky Dept. of Corrections v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) (citing *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir.2001)). For example, a statement or written document showing a discriminatory motive on its face would be direct evidence of discrimination. 45C Am. Jur. 2d *Job Discrimination* § 2384 (2007). In the absence of direct evidence, a plaintiff alleging violation of the Kentucky Civil Rights Act must satisfy the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *See Tiller v. University of Kentucky*, 55 S.W.3d 846 (Ky. Ct. App. 2001).

Plaintiff has provided a statement that constitutes direct evidence of LFD's discriminatory motive. Larry Needy, Plaintiff's father and a forty-seven-year veteran of the LFD, testified at his deposition that Major Julie Baines on several occasions in the fall of 2004 had said that she would have to hire females as dispatchers because there were not enough

bedrooms for males.[4]  Since Baines was not deposed, Defendant argues that the statements are hearsay, which cannot be considered on summary judgment.  *Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)).  However, the Federal Rules of Evidence characterize admissions by party-opponents, including some statements by their agents, as non-hearsay.  Fed. R. Evid. 801(d)(2).  Specifically, "a statement by the party's agent or servant *concerning a matter within the scope of the agency or employment*, made during the existence of the relationship," and offered against the party, is not hearsay.  Fed. R. Evid. 801(d)(2)(D) (emphasis added).  The rule is designed "to bind the employer where one of its managerial employees makes a statement within the scope of the employee's duties as a manager."  *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (citing *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005)).

The issue is whether Maj. Baines was within the scope of her employment when she allegedly made the statements about hiring practices.  If the declarant is a direct decision-maker concerning the employment decision at issue, it is strong proof that a statement about such employment decision was made within the scope of employment.  *Carter v. University of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003). Moreover, "the 'scope of employment' criterion extends beyond direct decision-makers," and includes statements by persons who have the ability to influence personnel decisions.  *See id.* at 275-76 (holding that a vice provost's alleged comments to a terminated African-American professor about a particular dean being racist were

---

[4] The timing of these statements may affect their probative value.  At his deposition in November 2006, Larry Needy said that the statements had been made "probably two years ago – approximately two years ago," which may have been months after the hiring decision at issue had already been made.

6

non-hearsay because they concerned a matter within the scope of his employment, even though the vice provost had no authority with respect to the professor's termination, as the vice provost's duties included ensuring that deans complied with university's affirmative action requirements when hiring faculty).

Baines was a member of the three-person panel that interviewed and ultimately recommended Plaintiff for employment with the LFD. Defendant argues that Baines's role was not one of decision-maker, and that it was Col. Stewart who, upon review of the panel's interview, made the final recommendation to the Chief, who ultimately made the hiring decision. However, as a member of the interview committee, Maj. Baines may have held strong influence over the hiring decisions of the LFD. She was a direct link in the hiring process. Even though the panel ultimately recommended Needy for employment, Baines's presence on the panel means that her statements about the hiring criteria at the LFD were probably made within the scope of employment. Thus, the statements are likely party admissions not excluded as hearsay.

The Court is aware that but for Baines's alleged comments, Needy's claims would not likely survive summary judgment because the circumstantial evidence for discrimination is extremely weak, and Plaintiff would likely fail the *McDonnell Douglas* burden-shifting test. The background circumstances suggest that LFD has a strong history of male employment, with over 90% of its employees and over one-third of its dispatchers being male, and Needy presented no evidence that he was similarly situated to the female employees ultimately hired by LFD. Moreover, LFD proffered a very strong legitimate nondiscriminatory reason for not hiring Needy: the presence of glaring inconsistencies among answers to questions about his prior employment on his application and during his interview and polygraph test. Needy presented

7

virtually no evidence suggesting that these reasons were a pretext for a gender-motivated decision.

However, where one has direct evidence of discriminatory intent even though it is not particularly compelling, it is a jury's role to weigh the conflicting evidence. If a jury were to believe that Baines's in fact made the remarks attributed to her, then they might find that the LFD's proffered reasons "did not actually motivate the defendant's challenged conduct." *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir.2003). This is a credibility determination that must be resolved by the factfinder, not by the court as a matter of law. Nevertheless, it is important to remember that the Court has only determined to consider Maj. Baines' statement for purposes of the pending motion. Since the issue has not been fully briefed and factors at trial could affect admissibility, the Court declines to make a final ruling as to whether the alleged statements of Maj. Baines will be admissible at trial. However, the fact that they are likely not hearsay requires the Court to consider them on summary judgment and prevents it from dismissing the claims at this time.

The Court will enter an order consistent with this Memorandum Opinion.

cc:  Counsel of Record